Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| CASCADE FUNDING MORTGAGE TRUST HB2 <br><br> Recurrida <br><br> v. <br><br> SONIA LUZ LEBRÓN CRUZ, ESTADOS UNIDOS DE AMÉRICA <br><br> Peticionaria | KLCE202500426 | *Certiorari* procedente del Tribunal de Primera Instancia Sala de Bayamón <br><br> Civil Núm. BY2021CV02989 <br><br> Sobre: <br><br> Ejecución de Hipoteca: Propiedad Residencial |
|---|---|---|

Panel integrado por su presidente, el Candelaria Rosa[1], el Juez Adames Soto y la Jueza Aldebol Mora

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 6 de agosto de 2025.

Comparece la señora Sonia Luz Lebrón Cruz (señora Lebrón Cruz o peticionaria), solicitando que revisemos una *Resolución* del Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), emitida el 28 de febrero de 2025. En el contexto de un cobro de dinero y ejecución de hipoteca, mediante el dictamen recurrido el foro primario declaró *No Ha Lugar* la solicitud de nulidad de sentencia presentada por la señora Lebrón Cruz, en la que esta había aducido falta de jurisdicción sobre su persona.

Por los fundamentos que expondremos a continuación, decidimos *expedir* el auto de *certiorari* y *revocar* el dictamen recurrido.

## I. Resumen del tracto procesal

El tracto procesal de este caso es extenso, aquí procuraremos reproducir aquello que juzguemos útil en la consideración de la controversia que nos ha tocado dirimir.

---

[1] Mediante Orden Administrativa OATA-2025-070 se designa al Hon. Carlos I. Candelaria Rosa como Presidente del Panel, debido a que el Hon. Abelardo Bermúdez Torres dejó de ejercer funciones como Juez del Tribunal de Apelaciones el 6 de mayo de 2025.

El 2 de agosto de 2021, Reverse Mortgage Solutions, Inc. (Reverse Mortgage) presentó una *Demanda* de cobro de dinero y ejecución de hipoteca en contra de la señora Lebrón Cruz, por alegados incumplimientos de pago de *hipoteca revertida.*

A tenor con la causa de acción presentada, el 29 de octubre de 2021, Reverse Mortgage instó una *Moción Informativa* ante el TPI afirmando que había emplazado a la señora Lebrón Cruz el 23 de agosto de 2021. A tal propósito, en la moción incluyó una declaración jurada suscrita por el señor Miguel Báez Torres, quien, se alegó, diligenció el emplazamiento personal.

Posteriormente, resultado de la incomparecencia de la señora Lebrón Cruz a los procesos judiciales, Reverse Mortgage solicitó que se le anotara la rebeldía.

En efecto, el tribunal *a quo* le anotó la rebeldía a la señora Lebrón Cruz y, el 30 de diciembre de 2021, dictó *Sentencia en Rebeldía,* declarando *Ha Lugar* la *Demanda,* ordenando el pago de lo debido, más otros remedios especificados en el dictamen aludido, incluyendo la ejecución de la hipoteca.

El 22 de febrero de 2022, el TPI aprobó la sustitución del acreedor hipotecario Reverse Mortgage, por Cascade Funding Mortgage Trust HB2 (Cascade Funding), que es la parte que funge como recurrida ante nosotros.

Luego de varios trámites procesales, incluyendo la venta en pública subasta de la propiedad, el 3 de agosto de 2023, la señora Lebrón Cruz compareció por primera vez ante el TPI, mediante una *Urgente Moción Asumiendo Representación Legal, en Solicitud de Nulidad de Sentencia y para que se Deje Sin Efecto el Lanzamiento Pautado para el 10 de Agosto de 2023 en este Caso,* (*Solicitud de Relevo de Sentencia* en adelante). Como lo anticipa el título de la moción, esta solicitó al TPI que declarase nula *ab initio* la *Sentencia* de 30 de diciembre de 2021, al amparo de la Regla 49.2

de las de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2, arguyendo que no se había adquirido jurisdicción sobre su persona pues nunca fue debidamente emplazada. A estos efectos, presentó una declaración jurada, suscrita por la propia peticionaria, afirmando no haber recibido ninguna notificación del pleito, excepto la del lanzamiento de su propiedad.

Ante lo cual, Cascade Funding instó oportuna moción en oposición, arguyendo sobre la validez del emplazamiento realizado en la persona de la peticionaria, el 23 de agosto de 2021. Sobre lo mismo, esgrimió que el TPI tuvo la oportunidad de evaluar si el diligenciamiento del emplazamiento había sido conforme a las reglas procesales aplicables y certificó que ninguna de las comunicaciones enviadas a la peticionaria había sido devueltas, habiendo advenido la sentencia cuya nulidad se solicitaba en final y firme. Por último, planteó que, ante la solicitud de relevo de sentencia al amparo de la Regla 49.2, *supra*, la peticionaria debió traer este asunto mediante una acción independiente.

Mediante moción escrita la peticionaria planteó al Tribunal que la controversia sobre el emplazamiento debía dilucidarse en vista evidenciaria.

Sobre esto último, el TPI le concedió un término de quince (15) días a Cascade Funding para que presentara su posición.

En cumplimiento, Cascade Funding presentó *Oposición a Urgente Moción de Reconsideración y en Solicitud de Vista Evidenciaria.*

Mediante una *Dúplica a "Réplica a Urgente Moción de Reconsideración y en Solicitud de Vista Evidenciaria"* la peticionaria reiteró que la falta de jurisdicción sobre su persona viciaba de nulidad el procedimiento conducido, por lo que se requería que el TPI celebrara una vista evidenciaria para dilucidar esta controversia.

Sopesado el cuestionamiento jurisdiccional, el TPI determinó señalar una vista evidenciaria para considerar la controversia sobre alegada falta

de emplazamiento, a ser celebrada el 11 de diciembre de 2023, *de forma presencial.*

Empero, por causa de una *Moción en Solicitud de Turno Posterior y Recalendarización,* el TPI transfirió la referida vista evidenciaria para el 13 de diciembre de 2023, manteniéndola de *forma presencial.*

El 3 de octubre de 2023, Reverse Mortgage presentó una *Moción en Oposición a Dúplica a "Réplica a Urgente Moción de Reconsideración y en Solicitud de Vista Evidenciaria y Solicitud de Reconsideración Señalamiento de Vista Evidenciaria"*. Reiteró su afirmación de que la señora Lebrón Cruz había sido emplazada conforme a Derecho.

Ante ello, la peticionaria instó *Oposición a Dúplica [...]* reafirmándose en la necesidad de que el TPI celebrara la vista evidenciaria para dirimir el asunto de la jurisdicción sobre su persona.

El TPI emitió una *Orden* dando por sometido el asunto, advirtiendo que estaría resolviendo por escrito, y prohibiendo a las partes el presentar escritos adicionales hasta que se resolviera la controversia.

No obstante, la peticionaria instó una *Urgente Solicitud de Defensor Judicial y de Remedio,* solicitando posponer la vista evidenciaria hasta que se atendiera el asunto de su estado mental. Además, adujo que, por su avanzada edad y condiciones de salud, no podría comparecer a la vista, pues podría causarle tensión y ansiedad.

Así las cosas, el TPI ordenó que la señora Lebrón Cruz acudiera a la vista pautada, para entonces estar el Tribunal en condiciones de determinar la necesidad de nombrarle un defensor judicial. Sobre este tema, el mismo foro hizo constar que, de los documentos presentados por la peticionaria en su solicitud de un defensor judicial, no se desprendía condición de salud mental alguna. Por otro lado, reseñaló la vista para el 21 de febrero de 2024.

Con todo, más adelante, la señora Lebrón Cruz presentó una *Moción de Sentencia Sumaria* aduciendo que se habían transgredido varios

requisitos legales jurisdiccionales en el proceso de petición de ejecución de hipoteca, que tornaban nula la *Sentencia.* Además, solicitó que la vista pautada para el 21 de febrero de 2024 fuera una de estado de los procedimientos, y llevada a cabo mediante videoconferencia, debido a su salud.

De una *Minuta* de 26 de febrero de 2024 surge que el TPI pautó la vista evidenciaria para dilucidar la controversia sobre el emplazamiento a ser efectuada el 30 de abril de 2024, que sería de manera presencial, para lo cual citó al señor Miguel Báez Torres, persona que figuraba como quien diligenció el emplazamiento a la señora Lebrón Cruz. Además, se hizo constar que la petición de un defensor judicial sería retirada.

Cascade Funding presentó *Oposición a Solicitud de Sentencia Sumaria y Solicitud de Reconsideración y Orden.*

Por su parte, el 12 de marzo de 2024, el foro *a quo* emitió una *resolución* en la que determinó que podía solicitarse el relevo por nulidad de una sentencia, cuando esta hubiese sido dictada sin jurisdicción sobre la persona. Ante ello, de igual forma zanjó que procedía la celebración de una vista evidenciaria para dirimir si la señora Lebrón Cruz fue emplazada conforme a derecho.

Luego de varios escritos presentados por las partes, el 30 de abril de 2024, la peticionaria presentó una *Urgente Solicitud de Remedio.* En esta solicitó la transferencia de la vista evidenciaria pautada, y que esta fuera celebrada mediante videoconferencia. Además, adujo haber sufrido un incidente cardiaco el 2 de noviembre de 2023, por lo que no le sería beneficioso participar de manera presencial en una vista tan estresante.

Ante esta solicitud, el TPI emitió una *Orden,* también el 30 de abril de 2024, aunque notificada el 1 de mayo del mismo año, dejando sin efecto la vista evidenciaria pautada. Asimismo, ordenó a la peticionaria que, en un término de veinte (20) días, presentara excusa médica para

explicar por qué no se podría someter a un proceso judicial de manera presencial.

Además, mediante otra *Orden* emitida, el TPI declaró *No Ha Lugar* a la *Moción de Sentencia Sumaria* instada por la peticionaria.

Lo anterior dio lugar a que la señora Lebrón Cruz acudiera ante nosotros, mediante recurso de *certiorari*, en el caso que se identificó bajo el alfanumérico KLCE202400607. Planteó en esa ocasión que el TPI debió acoger la solicitud de sentencia sumaria presentada, y, de igual forma, conceder el relevo de sentencia solicitado.

Sin embargo, mediante *Resolución* de 24 de junio de 2024, este Tribunal de Apelaciones decidió denegar expedir el auto discrecional solicitado. Al así disponer advertimos que el foro primario había identificado correctamente que **primaba resolver la controversia sobre presunta falta de jurisdicción en la persona de la peticionaria, antes que cualquier otro asunto, y que, por dicho foro haber dispuesto fecha para la celebración de una vista evidenciaria para ello**, no se justificaba la intervención de este Tribunal de Apelaciones al momento.

Habiendo retornado el asunto al foro primario, el 22 de mayo de 2024, Cascade Funding instó allí una *Moción en Solicitud de Orden,* llamando la atención a que el término concedido a la peticionaria para presentar la excusa médica había vencido, sin que cumpliera con proveer la orden para explicar por qué no podía participar de una vista presencial. De igual forma, argumentó que las otras alegaciones esgrimidas por la peticionaria, sobre presunta nulidad de sentencia, resultaban tardías, toda vez que lo único que podía provocar la nulidad de los procedimientos en esta etapa era la falta de emplazamiento.

A lo anterior la peticionaria se opuso mediante moción, esgrimiendo que las alternativas de mitigación de pérdidas configuraban un requisito jurisdiccional para los procedimientos de ejecución de hipoteca. Añadió que la señora Lebrón Cruz no se oponía a participar del procedimiento

judicial, sino que solicitaba que fuera llevado a cabo mediante videoconferencia.

El 24 de mayo de 2024, el TPI consignó mediante *Orden* que el asunto quedaba sometido para su adjudicación.

Luego de varias incidencias procesales, que no detallaremos, el 12 de febrero de 2025, Cascade Funding presentó una *Moción Informativa y Solicitando Continuación de los Procedimientos.*

En respuesta, el TPI emitió una *Orden* expresando lo que sigue; "el presente caso tiene sentencia final y firme. Solicite lo que proceda en derecho".

Ante ello, el 28 de febrero de 2025, Cascade Funding presentó una *Moción Solicitando Resolución y Lanzamiento,* en la cual incluyó una solicitud para que el TPI resolviera por escrito el planteamiento jurisdiccional sobre el emplazamiento de la peticionaria. Además, peticionó que se expidiera una nueva *Orden y Mandamiento de Lanzamiento* para así poder tomar posesión del inmueble, pues ya ostentaba su titularidad.

Acorde a lo solicitado, el 28 de febrero de 2025, el TPI emitió una *Resolución Interlocutoria* en la cual declaró *No Ha Lugar* la solicitud de nulidad de sentencia.

Inconforme, la peticionaria presentó *Moción de Reconsideración de Resolución Interlocutoria (Entrada Número 119),* reiterando el planteamiento sobre falta de jurisdicción sobre su persona. De igual forma arguyó sobre la nulidad de la sentencia, al amparo de la Regla 49.2, *supra,* ante la falta del emplazamiento personal.

El 18 de marzo de 2024, el TPI declaró *No Ha Lugar* la solicitud de reconsideración.

Es así como la peticionaria acude ante nosotros mediante recurso de *certiorari*, levantando los siguientes señalamientos de error:

A. ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL EMITIR RESOLUCIÓN INTERLOCUTORIA EN ESTE CASO PARA AVALAR EL QUE LA PARTE RECURRIDA

DESPOJE A LA PARTE RECURRENTE DE SU HOGAR, CUANDO LE CONSTA O DEBE CONSTARLE QUE LA PARTE RECURRENTE HA EXPUESTO ASUNTOS DE NATURALEZA JURISDICCIONAL QUE NO HAN SIDO ATENDIDOS EN SUS MÉRITOS POR EL FORO DE INSTANCIA.

B. ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA ANTEDICHA Y DENEGAR LA MOCIÓN DE RECONSIDERACIÓN CORRESPONDIENTE DE LA PARTE RECURRENTE, CUANDO LA PARTE RECURRENTE NO HA SIDO EMPLAZADA PERSONALMENTE, NO SE LE HAN OFRECIDO TODAS LAS ALTERNATIVAS DE MITIGACIÓN DE PÉRDIDAS, NO SE LE HA PERMITIDO RECLAMAR SU DERECHO DE POSESIÓN DEL INSTRUMENTO NEGOCIABLE DE ESTE CASO DE CONFORMIDAD CON LA SECCIÓN 2-306 DE LA LEY DE TRANSACCIONES COMERCIALES, SEGÚN ENMENDADA, *SUPRA*. TAMPOCO, LA PARTE RECURRIDA HA SATISFECHO LAS DISPOSICIONES BÁSICAS DEL ORDENAMIENTO JURÍDICO EN CUANTO A LAS HIPOTECAS TIPO "REVERSE MORTGAGE".

C. ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL EMITIR RESOLUCIÓN INTERLOCUTORIA A FAVOR DE LA PARTE RECURRENTE CUANDO LOS PROCEDIMIENTOS Y SENTENCIA DE ESTE CASO SON NULAS Y LA PARTE RECURRENTE DEBE SER RELEVADA DE DICHOS PROCEDIMIENTOS Y SENTENCIA DE CONFORMIDAD CON LA REGLA 49.2 DE LAS DE PROCEDIMIENTO CIVIL, *SUPRA*.

A raíz de ello, Cascade Funding presentó escrito en *Oposición*.

## II. Exposición de Derecho

### a. Moción de Relevo de Sentencia

La Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2, es un remedio procesal disponible para solicitar al tribunal el relevo de los efectos de una sentencia por causa justificada; es decir, por alguno de los fundamentos allí establecidos. La regla dispone lo siguiente:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> (a) Error, inadvertencia, sorpresa o negligencia excusable;
>
> (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48 de este apéndice;
>
> (c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;

**(d) nulidad de la sentencia;**

(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Las disposiciones de esta regla no serán aplicables a las sentencias dictadas en pleitos de divorcio, a menos que la moción se funde en los incisos (c) o (d) de esta regla. La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Una moción bajo esta regla no afectará la finalidad de una sentencia, ni suspenderá sus efectos. Esta regla no limita el poder del tribunal para:

(1) Conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;

(2) conceder un remedio a una parte que en realidad no haya sido emplazada, y

(3) dejar sin efecto una sentencia por motivo de fraude al tribunal.

(Énfasis provisto).

La moción de relevo de sentencia es un mecanismo *post sentencia* creado con el objetivo de impedir que sofisticaciones y tecnicismos puedan privar los fines de la justicia. *García Colón et al. v. Sucn. González*, 178 DPR 527, 539 (2010); *Náter Cardona v. Ramos Muñiz*, 162 DPR 616, 624, (2004); *Ortiz Serrano v. Ortiz Díaz*, 106 DPR 445, 449 (1977); *Southern Construction Co. v. Tribunal Superior*, 87 DPR 903, 905–906 (1963). No obstante, aunque el remedio de reapertura existe en bien de la justicia, no constituye una facultad judicial absoluta, porque a éste se contrapone la fundamental finalidad de que haya certeza y estabilidad en los procedimientos judiciales, y de que se eviten demoras innecesarias en el trámite judicial. Les toca a los tribunales, pues, establecer un balance adecuado entre ambos intereses. *Piazza Vélez v. Isla del Rio, Inc.*, 158 DPR 440, 448 (2003); *Fine Art Wallpaper v. Wolff*, 102 DPR 451, 457–458 (1974). La consabida regla no constituye una llave maestra para reabrir controversias, ni sustituye los recursos de apelación o reconsideración. Es decir, el precepto no está disponible para alegar

cuestiones sustantivas que debieron ser planteadas mediante los recursos de reconsideración y apelación. (Citas omitidas). *García Colón et al. v. Sucn. González, supra,* pág. 541.

Al conceder un remedio contra los efectos de una sentencia, el tribunal debe determinar si bajo las circunstancias específicas del caso existen razones que justifiquen tal concesión. *Olmeda Nazario v. Jiménez,* 123 DPR 294, 299 (1989); *Dávila v. Hosp. San Miguel, Inc.,* 117 DPR 807 (1986). En este sentido, previo a dejar sin efecto una sentencia, se deberán considerar ciertos criterios a fin de salvaguardar los derechos de las partes envueltas en el litigio, a saber: (a) si el apelante tiene una buena defensa en su méritos; (b) el tiempo que media entre la sentencia y la solicitud de relevo; (c) el grado de perjuicio que pueda ocasionarle a la otra parte la concesión del referido relevo; (d) el perjuicio, si alguno, que sufriría la parte promovente si el tribunal no concede el remedio solicitado; y (e) si el promovente de la solicitud ha sido diligente en la tramitación de su caso. *Reyes Díaz v. Estado Libre Asociado de Puerto Rico,* 155 DPR 799 (2001); *Pardo v. Sucn. Stella,* 145 DPR 816 (1998); *García Colón et al. v. Sucn. González,* supra, a las págs. 540-541; *Neptune Packing Corp. v. Wackenhut Corp.,* 120 DPR 283 (1988).

Para que proceda el relevo de sentencia de conformidad con la Regla 49.2 de las de Procedimiento Civil, *supra,* es necesario que el peticionario aduzca, al menos, una de las razones enumeradas en esa regla para tal relevo. Es decir, la parte peticionaria está obligada a justificar su solicitud amparándose en una de las causales establecidas en la regla. *García Colón et al. v. Sucn. González,* supra, a la pág. 540; *Reyes v. E.L.A. et al.,* 155 DPR 799, 809 (2001). Además, relevar a una parte de los efectos de una sentencia es una decisión discrecional del tribunal, **salvo en los casos de nulidad** o cuando la sentencia ha sido satisfecha. (Énfasis provisto). *García Colón et al. v. Sucn. González,* supra; *Rivera v. Algarín,* 159 DPR 482, 490 (2003); *Garriga Gordils v. Maldonado Colón,* 109 DPR 817, 823-

824 (1980); R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 4ta ed., San Juan, Ed. LexisNexis, 2007, Sec. 4803, pág. 352.

En cuanto a la interpretación de dicho mecanismo procesal, nuestro alto Foro ha dispuesto que, aunque no puede ser utilizado en sustitución de los recursos de revisión o reconsideración, una moción de relevo de sentencia debe ser interpretada liberalmente y cualquier duda debe ser resuelta a favor de la parte que solicita se deje sin efecto la sentencia. *García Colón et al. v. Sucn. González*, supra, a las págs. 540-541; *Náter Cardona v. Ramos Muñiz*, supra, a las págs. 624-625.

Por otro lado, la moción de relevo de sentencia debe presentarse dentro de un término razonable que no exceda los seis meses establecidos en la Regla 49.2, *supra*. Sin embargo, **el plazo aludido es inaplicable cuando se trata de una sentencia nula**. (Énfasis provisto). *García Colón et al. v. Sucn. González*, supra, a la pág. 543; *Pardo v. Sucn. Stella*, 145 DPR 816, 824 (1998). Por ejemplo, **una sentencia es nula si ha sido dictada por un tribunal o foro sin jurisdicción**. Como es sabido, una sentencia nula tiene que dejarse sin efecto, independientemente de los méritos que pueda tener la defensa o la reclamación del perjudicado. Dicho de otro modo, **ante la certeza de que una sentencia es nula, resulta mandatorio declarar su inexistencia jurídica, por lo que no cabe hablar de discreción en cuanto a tal proceder**. **Ello así, independientemente de que la solicitud se haga luego de transcurrido el plazo de seis meses establecido en la Regla 49.2 de las de Procedimiento Civil**, *supra*. (Énfasis provisto). *García Colón el al. v. Sucn. González*, supra, a las págs. 543-544.

La antedicha excepción resulta cónsona con la porción de la Regla 49.2 que expresa que dicha regla "no limita el poder del tribunal para: … (2) conceder un remedio a una parte que en realidad no haya sido emplazada", *supra.*

**b. Jurisdicción y emplazamiento**

La jurisdicción se ha definido como el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 267 (2018); *Yumac Home v. Empresas Massó*, 194 DPR 96, 103 (2015); *Horizon Media v. Jta. Revisora, RA Holdings,* 191 DPR 228, 233 (2014). Tanto los foros de instancia, como los apelativos, tienen el deber de analizar de forma prioritaria si poseen jurisdicción para atender las controversias presentadas ante su consideración, puesto que los tribunales estamos llamados a ser fieles guardianes de nuestra jurisdicción, incluso cuando ninguna de las partes invoque tal defecto. *Ruiz Camilo v. Trafon Group, Inc.,* supra, en la pág. 268; *Horizon Media v. Jta. Revisora, RA Holdings, supra; Shell Chemical v. Srio. Hacienda*, 187 DPR 109, 122-123 (2012).

Lo anterior responde a que **las cuestiones jurisdiccionales son materia privilegiada y deben resolverse con preferencia a los demás asuntos**. (Énfasis provisto). *Mun. San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014); *García v. Hormigonera Mayagüezana*, 172 DPR 1, 7 (2007). El Tribunal Supremo ha añadido que evaluar los aspectos jurisdiccionales es parte de nuestro deber ministerial y debe hacerse antes de que el tribunal pueda conocer del pleito. *Ruiz Camilo v. Trafon Group, Inc.,* supra*; Mun. San Sebastián v. QMC Telecom, O.G.P.,* supra; *García v. Hormigonera Mayagüezana,* supra. De aquí que, si determinamos que no tenemos jurisdicción sobre un recurso o sobre una controversia determinada, debemos así declararlo y proceder a desestimarlo, pues, **no tenemos discreción para asumir jurisdicción donde no la hay**. (Énfasis provisto). *Mun. San Sebastián v. QMC,* supra*; Yumac Home v. Empresas Massó,* supra.

Dentro de este análisis jurisdiccional, los tribunales tenemos que considerar si ostentamos el poder o la autoridad para sujetar a una persona a una decisión obligatoria declarando sus respectivos derechos y

obligaciones, a esto se le conoce como jurisdicción *in personam. Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 702 (2012). **Un tribunal adquiere la jurisdicción sobre la persona del demandado de dos maneras**: **mediante el uso adecuado de las normas procesales de emplazamiento provistas en las Reglas de Procedimiento Civil** y, a través de la sumisión voluntaria del demandado a la jurisdicción del tribunal, lo que puede ser de forma explícita o tácita. (Énfasis provisto). *Cancel Rivera v. González Ruiz*, 200 DPR 319, 330 (2018); *Cirino González v. Adm. de Corrección*, 190 DPR 14, 29 (2014); *Márquez v. Barreto*, 143 DPR 137, 143 (1997).

Además, el alto foro ha expresado que *[e]l concepto de jurisdicción in personam, está inextricablemente atado al debido proceso de ley. Torres Zayas v. Montano Gómez*, 199 DPR 458, 467 (2017); *Reyes v. Oriental Fed. Savs. Bank*, 133 DPR 15, 21 (1993). Esto es así pues el emplazamiento tiene como propósito principal *notificar a la parte demandada que existe una acción judicial en su contra, garantizándole la oportunidad de comparecer en el juicio, ser oído y presentar prueba a su favor. Torres Zayas v. Montano Gómez*, supra; *Bonilla Ramos v. Dávila Medina*, 185 DPR 667, 682 (2012); *Banco Popular v. S.L.G. Negrón*, 164 DPR 855, 863 (2005). Cuando un tribunal carece de jurisdicción sobre la materia o sobre la persona, **su actuación u orden se considera nula; esto es, inexistente, por lo que no surte efecto alguno**. (Énfasis provisto). *López García v. López García*, 200 DPR 50, 62 (2018); *First Bank of P.R. v. Inmob. Nac., Inc.*, 144 DPR 901, 913 (1998).

Es mediante el debido diligenciamiento del emplazamiento que el tribunal adquiere jurisdicción sobre la persona para resolver un asunto. *Cancel Rivera v. González Ruiz*, 200 DPR 319, 330 (2018); *Torres Zayas v. Montano Gómez*, 199 DPR 458, 467 (2017); *Global v. Salaam*, 164 DPR 474, 480 (2005). En consonancia, no es hasta que se diligencie el emplazamiento que se adquiere jurisdicción, y la persona puede ser

considerada propiamente parte, pues, aunque haya sido nombrada en el epígrafe de la demanda, hasta ese momento sólo es parte nominal. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 5ta ed., Lexis Nexis, 2010, pág. 220. *Torres Zayas v. Montano Gómez, supra; Sánchez Rivera v. Malavé Rivera*, 192 DPR 854 (2015).

De lo anterior se deriva que, ante un emplazamiento defectuoso, el tribunal está impedido de actuar contra una persona, **y si lo hace, la sentencia que recaiga será nula por falta de jurisdicción sobre la persona**. (Énfasis provisto). *Rivera v. Jaume*, 157 DPR 562, 573-574 (2002); *Reyes v. Oriental Fed. Savs. Bank,* supra, pág. 21. En definitiva, "**[t]oda sentencia dictada contra un demandado que no ha sido emplazado o notificado conforme a derecho es inválida y no puede ser ejecutada. Se trata de un caso de nulidad radical por imperativo constitucional**". (Énfasis provisto). *Torres Zayas v. Montano Gómez,* supra, pág. 469 citando a J. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 2012, pág. 56.

**III. Aplicación del Derecho a los hechos**

a.

Nuestro Tribunal Supremo ha advertido que las resoluciones atinentes a asuntos postsentencia no se encuentran incluidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*. *IG Builders v. BBVAPR*, 185 DPR 307, 339 (2012). Es decir, las determinaciones postsentencia no se conforman a los presupuestos contemplados en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, como aptos para la revisión interlocutoria del Tribunal de Apelaciones mediante el recurso de certiorari. *Íd.*

Sin embargo, en la misma Opinión citada, el alto Tribunal también advirtió que las resoluciones postsentencia no quedan desprovistas de posible revisión por este foro intermedio, pues la Regla 40 citada sirve de

fundamento legal que habilita tal posibilidad y dirige nuestra discreción al decidir expedir o no el recurso solicitado.

Precisamente, estamos ante una determinación postsentencia, de modo que los criterios para considerar la expedición del recurso discrecional presentado dimanan de la Regla 40 citada. Efectuado tal análisis, determinamos que se justifica nuestra intervención, pues estamos en una etapa del proceso propicia para ello, y la expedición del auto solicitado podría evitar una injusticia.

b.

El tracto procesal reproducido no deja dudas del consistente cuestionamiento de la señora Lebrón Cruz ante el TPI sobre la presunta falta de jurisdicción sobre su persona, por motivo de no haber sido debidamente emplazada. En consonancia, la *Solicitud de Relevo de Sentencia* que esta presentara se fundamentó, precisamente, en tal defensa, asunto cuya dilucidación prima sobre cualquier otro, por ser de carácter jurisdiccional.

A todas luces, el foro recurrido entendió la primacía del cuestionamiento jurisdiccional alzado por la aquí peticionaria, y por ello dispuso para la celebración de una vista evidenciaria en el que dilucidarlo, citando al emplazador de Cascade Funding.

En reconocimiento de lo anterior, fue que, en la *Resolución* de 24 de junio de 2024, en el KLCE202400607, decidimos no intervenir con el manejo del caso del tribunal *a quo*, pues nos resultó evidente que iba dirigido a dirimir la controversia sobre la presunta falta de emplazamiento adecuado.

Sin embargo, la referida vista evidenciaria nunca se efectuó.

Al observar lo anterior, no pasa por desapercibido el hecho de que el foro primario se mostró solícito al citar a las partes para la celebración de la referida vista en las siguientes fechas: 11 y 13 de diciembre de 2023; 21 de febrero y 30 de abril de 2024, y que ninguna de tales suspensiones

resulta atribuible al propio Tribunal, sino que respondieron a peticiones de parte, y la consideración de varios asuntos, ya narrados en el tracto procesal.

No obstante, emitida la *Orden* de 30 de abril de 2024, el TPI dejó sin efecto la vista evidenciaria señalada para ese día y ordenó a la peticionaria que presentara la evidencia por la cual presuntamente no podía someterse a los procedimientos de manera presencial. Luego de esto, el TPI determinó que el asunto sobre la jurisdicción *quedó sometido para su correspondiente adjudicación*, y, el 28 de febrero de 2025, emitió la *Resolución* declarando *No Ha Lugar* la *Solicitud de Relevo de Sentencia.*

Aunque, como queda visto, concedemos que el TPI proveyó varias fechas para la celebración de la vista evidenciaria en la que dilucidar el asunto jurisdiccional pendiente, no coincidimos con su proceder al adjudicarlo sin celebrar la vista. En concreto, si el proceder del foro recurrido tuvo como causa las repetidas posposiciones provenientes de la propia parte peticionaria, y la falta de provisión de documentación sobre el estado de salud de esta, juzgamos que el asunto jurisdiccional planteado merecía explorar otras avenidas procesales menos onerosas para lograr la celebración de la vista, como la imposición de sanciones económicas, antes de optar por su adjudicación sin la celebración de la vista evidenciaria. No estamos ajenos a la posible utilización de prácticas dilatorias en el proceso, pero el asunto jurisdiccional debía adjudicarse mediante la celebración de una vista, antes de resolver otros asuntos.

Aunque a este punto huelgue su reiteración, nuestro Tribunal Supremo ha repetido que las cuestiones jurisdiccionales deben resolverse con preferencia a los demás asuntos. *Mun. San Sebastián v. QMC Telecom,* supra. Un tribunal obtiene jurisdicción sobre la persona mediante el emplazamiento según dispuesto en las Reglas de Procedimiento Civil o mediante la sumisión voluntaria del demandado. *Cancel Rivera v. González Ruiz,* supra.

Ante un emplazamiento defectuoso, el tribunal está impedido de actuar contra una persona, y de así hacerlo, **la sentencia dictada resultará nula por falta de jurisdicción sobre la persona**. *Rivera v. Jaume*, supra. En consecuencia, el tribunal deberá evaluar la suficiencia de la defensa con prontitud para así evitar una costosa litigación y promover la rápida solución de la controversia contra la deseabilidad de que se celebre una vista evidenciaria, para así poder tener ante sí todos los elementos para resolver lo relacionado con falta de jurisdicción sobre la persona. *Molina v. Supermercado Amigo, Inc.*, supra.

En definitiva, el expediente ante nuestra consideración revela que el TPI no reseñaló la vista evidenciaria para considerar si había adquirido jurisdicción sobre la persona de la peticionaria, posterior a su última suspensión el 30 de abril de 2024. Es decir, la vista evidenciaria no se llevó a cabo. Siendo así, dicho foro optó por resolver la cuestión jurisdiccional solo a base de los escritos presentados por las partes, sin antes sancionar a la parte peticionaria por su incomparecencia a las vistas evidenciarias pautadas, y al así actuar incidió. Ante el planteamiento de la peticionaria sobre presunta falta de jurisdicción sobre su persona e insuficiencia en el emplazamiento, resulta necesario que el TPI celebre una vista evidenciaria.

Claro, si luego de advertir e imponer sanciones a la parte que retrase la celebración de tal vista evidenciaria, esta de todos modos no se pudiera celebrar, entonces estaría el TPI en posición de disponer del asunto sin más.

Por ser el señalamiento de error anterior uno de umbral, no estamos en posición de atender algún otro tema, hasta que contemos con una determinación sobre si el foro primario adquirió o no jurisdicción sobre la persona de la peticionaria.

**VI. Parte dispositiva**

Por los fundamentos expuestos, expedimos el recurso de *certiorari* solicitado y *revocamos* la determinación recurrida. En consecuencia, ordenamos la devolución del caso al TPI para que obre según lo aquí indicado.

Lo acordó el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones